**MARYLAND CASUALTY COMPANY,**
Appellant,

v.

**CITIZENS NATIONAL BANK OF WEST HOLLYWOOD** et al., Appellees.

No. 21992.

May 13, 1966.

United States Court of Appeals
Fifth Circuit.

May 13, 1966.

---

10. See N.L.R.B. v. American Manufacturing Company of Texas, 5 Cir., 351 F.2d 74, 81.

Robert E. Ziegler, Fort Lauderdale, Fla., Rogers, Morris & Ziegler, Fort Lauderdale, Fla., for appellant.

Robert M. Perry, Atty., Dept. of Justice, Wash., D. C., amicus curiæ.

Robert C. Josefsberg, Asst. U. S. Atty., Miami, Fla., Donald W. Hulmes, Hollywood, Fla., A. J. Ryan, Jr., Dania, Fla., George L. Maxon, Hollywood, Fla., Edwin L. Weisl, Jr., Asst. Atty. Gen., William A. Meadows, Jr., U. S. Atty., Miami, Fla., Roger P. Marquis, Robert M. Perry, Attorneys, Department of Justice, Washington, D. C., for appellees.

Before PHILLIPS,* RIVES and COLEMAN, Circuit Judges.

PHILLIPS, Circuit Judge:

The question here presented is whether the Seminole Tribe of Florida, Inc.,[1] was immune from an ancillary action in garnishment to satisfy a judgment obtained against it. Seldomridge Construction Company,[2] as prime contractor, entered into a written contract with the Seminole Tribe to construct for the latter an office building and an arts and crafts center. Pursuant to the terms of the prime contract, Seldomridge, as principal, and Maryland Casualty Company,[3] as surety, entered into a performance and payment bond with the Seminole Tribe, one condition of which was that Seldomridge would pay for all labor and materials incorporated in the buildings.

Article V of the prime contract, which was incorporated in the bond, in part provided that "before issuance of final certificate, the contractor shall submit evidence satisfactory to the architect that all payrolls, material bills * * * have been paid."

---

* Of the Tenth Circuit, sitting by designation.

1. Hereinafter called the Seminole Tribe.

2. Hereinafter called Seldomridge.

3. Hereinafter called Maryland.

Unit Structures, Inc.,[4] furnished materials to Seldomridge, which were incorporated in the buildings, of the reasonable value of $14,004.15, for which it had not been paid. The President of Seldomridge represented to the Seminole Tribe that Seldomridge had a damage claim against Unit Structures that would more than satisfy the latter's claim for materials. Thereafter, on September 22, 1960, Seldomridge, by a written contract, agreed to indemnify the Seminole Tribe from any liabilities, loss, damage or expense which it might sustain by reason of any claim made by Unit Structures. Thereafter, the Seminole Tribe paid Seldomridge the final payment due on the construction contract.

In the original action brought by Unit Structures, it recovered a judgment against Maryland for $14,004.15, the amount due on its claim for materials, plus interest, attorneys' fees, and costs, aggregating $19,482.90, and Maryland, as third party plaintiff, recovered a judgment against the Seminole Tribe for $17,332.90.[5]

Prior to the execution of the construction contract, the Secretary of the Interior had issued to the Seminole Tribe a charter of incorporation under the provisions of 25 U.S.C.A. § 477, and at all times here material it was a body corporate.

Maryland, after recovering judgment against the Seminole Tribe, caused a writ of garnishment to issue and to be served against the Citizens National Bank of West Hollywood,[6] seeking to recover tribal funds on deposit in such bank to satisfy its judgment.

At the time the writ was served, all of the funds deposited in the Bank to the credit of the Seminole Tribe had been deposited by the United States as a part of a revolving credit fund for the Seminole Tribe, under a deposit agreement that provided:

4. Hereinafter called Unit Structures.

5. Judgments were also awarded Maryland against Seldomridge and in favor of the Seminole Tribe against Seldomridge.

"The Seminole Tribe of Florida, Inc. hereby assigns, transfers and pledges the aforesaid deposit or deposits, hereby or hereafter made, to the 'United States of America' as security for the repayment of any and all indebtedness for which it may obligate itself to the United States of America and for the performance of the Corporation's obligations in connection with such indebtness until such time as deposit or deposits are released, as hereafter provided."

It further provided that "upon written demand of the Superintendent of the Seminole Indian Agency the bank" should "pay over the balance" of the deposit, "or any part thereof demanded, in accordance with the demands."

The United States was not a party to the action, but on June 5, 1964, it filed in the action a document entitled, "Representation of Interest of the United States," in behalf of itself and the Seminole Tribe, in which it set up that the Seminole Tribe received a loan of $100,000 from the United States from the revolving credit fund maintained by the Bureau of Indian Affairs; that the amount of the loan was deposited in the Bank, pursuant to the terms of the deposit agreement, and an assignment of the deposit to the United States as security for the repayment of the loan; that the agreement also provided for withdrawal of the deposit upon the written demand of the Superintendent of the Seminole Indian Agency; that on May 28, 1964, the Superintendent made a written demand on the Bank for the withdrawal of the balance of such deposit; that the Bank refused to deliver to the Superintendent the entire balance and withheld a sum from such balance to cover the amount of Maryland's judgment against the Seminole Tribe.

6. Hereinafter called the Bank.

The United States asserted in the document in behalf of the Seminole Tribe and itself that the funds on deposit were not subject to garnishment. The Seminole Tribe filed a motion to dismiss the garnishment proceeding.

The court held that under Article VI, Sec. 9 of the Charter, set out *infra*, the funds were immune from garnishment and that the United States had a lien on the deposit, which was prior to the judgment of Maryland, and dismissed the ancillary garnishment proceeding with prejudice. Maryland has appealed.

■ The paramount authority of the federal government over Indian tribes and Indians is derived from the Constitution, and Congress has the power and the duty to enact legislation for their protection as wards of the United States.[7]

■ From the beginning of our government, Indian nations or tribes have been regarded as dependent political communities or nations; and as possessing the attributes of sovereignty, except where they have been taken away by Congressional action.[8] They are quasi-sovereign nations.[9]

■ Indian nations, as an attribute of their quasi-sovereignty, are immune from suit, either in the federal or state courts, without Congressional authorization.[10]

25 U.S.C.A. § 477, in part here pertinent, provides:

"The Secretary of the Interior may, upon petition by at least one-third of the adult Indians, issue a charter of incorporation to such tribe: * * *. Such charter may convey to the incorporated tribe the power to purchase, * * * own, hold, manage, operate, and dispose of property of every description, real and personal, * * * and to issue in exchange therefor interests in corporate property, and such further powers as may be incidental to the conduct of corporate business, not inconsistent with law, * * *."

■ The Seminole Tribe was incorporated pursuant to that section. The statute gave no powers to the corporation. It provided that the Secretary of the Interior "may" convey powers to the corporation by the charter; and it is clear that the powers granted to the corporation were only those which the Secretary of the Interior, by the terms of the charter, conveyed to them.

The charter, by Article VI thereof, defined the powers of the corporation. In part here material, it reads:

"Section 1. This tribal corporation, subject to any restrictions contained in the Constitution and the laws of the United States or in the Constitution and Bylaws of the said tribe, shall have the following corporate powers.

7. Williams v. Lee, 358 U.S. 217, 219, n. 4, 79 S.Ct. 269, 3 L.Ed.2d 251; Perrin v. United States, 232 U.S. 478, 482, 34 S.Ct. 387, 58 L.Ed. 691; United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L. Ed. 228; Taylor v. Tayrien, 10 Cir., 51 F.2d 884, 887; Bryan County, Okl. v. United States, 10 Cir., 123 F.2d 782, 785.

8. Choctaw and Chickasaw Nations v. Seitz, 10 Cir., 193 F.2d 456, 458; Cherokee Nation v. Southern Kansas Railway Co., 135 U.S. 641, 653, 10 S.Ct. 965, 34 L.Ed. 295; Native American Church v. Navajo Tribal Council, 10 Cir., 272 F.2d 131, 133; Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., 8 Cir., 231 F.2d 89, 92.

9. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 512, 513, 60 S.Ct. 653, 84 L.Ed. 894; Ex parte Reynolds, C.C.Ark., 20 Fed.Cas. No. 11,719; Cf. Cherokee Nation v. State of Georgia, 5 Pet. 1, 7, p. 582, 8 L.Ed. 25.

10. United States v. United States Fidelity & Guaranty Co., supra; Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., supra; Cf. Williams v. Lee, supra; Haile v. Saunooke, 4 Cir., 246 F.2d 293, 297; Colliflower v. Garland, 9 Cir., 342 F.2d 369, 376.

\* \* \* \* \* \*

"Sec. 9. To sue or be sued; but the grant or exercise of such power to sue and to be sued shall not be deemed a consent by the said corporation or the United States to the levy of any judgment, lien or attachment upon the property of the Seminole Tribe of Florida, Inc., other than income or chattels especially pledged or assigned."

The waiver of the immunity to being sued was expressly qualified, and excluded from the waiver was the levy of any judgment, lien or attachment upon the property of the Seminole Tribe of Florida.

Counsel for the appellant urges that garnishment is not specifically named in the exclusionary clause and, therefore, is not excluded. We think there are two answers to that contention.

First, garnishment is closely akin to attachment. It "is directly founded upon the writ of attachment as by custom of London."[11] It is frequently defined as an attachment of goods, credits or effects belonging to the defendant or judgment debtor in the hands of a third person.[12]

The courts have characterized it as a species of attachment;[13] and in the nature of an attachment[14] or execution.[15]

But even more persuasive is the fact that the qualifying clause was written into Section 9 by the Secretary of the Interior to protect the property of the Seminole Tribe, other than income or chattels especially pledged or assigned; and hence it must be liberally construed in favor of the Seminole Tribe and all doubtful expressions therein resolved in favor of the Seminole Tribe.[16]

The fact that the Seminole Tribe was engaged in an enterprise private or commercial in character, rather than governmental, is not material. It is in such enterprises and transactions that the Indian tribes and the Indians need protection. The history of intercourse between the Indian tribes and Indians with whites demonstrates such need. It is obvious that the President of Seldomridge imposed on the Seminole Tribe when he induced it to pay Seldomridge the unpaid balance on the construction contract, with Unit Structures' claim outstanding. To construe the immunity to

11. Vol. 1, Bouv.Law Dict., Rawle's Third Revision, pp. 1334, 1335.

12. Kennedy v. Brent, 6 Cranch. 187, 10 U.S. 187, 3 L.Ed. 194; Beamer v. Winter, 41 Kan. 596, 21 P. 1078; Blaisdell v. Ladd, 14 N.H. 129; Berry-Beall Dry Goods Co. v. Adams, 87 Okl. 291, 211 P. 79; National Bank of Wilmington & Brandywine v. Furtick, 2 Marv. (Del.) 35, 42 A. 479, 481, 44 L.R.A. 115; Posselius v. First National Bank, 264 Mich. 687, 251 N.W. 429, 430, 90 A.L.R. 342; J. T. Sinclair Co. v. I. T. Becker Coal Co., 263 Mich. 617, 249 N.W. 13, 14.

13. Ex parte Cincinnati, S.&M. Ry. Co., 78 Ala. 258, 259; Citizens' National Bank of Godley v. Pollard, Tex.Civ.App., 31 S.W. 2d 508, 510; Farmers' National Bank v. Tennison, 90 Okl. 216, 217 P. 182, 183; Public Finance Co. v. Jump, 192 Okl. 368, 136 P.2d 706, 710; Allen v. Stracener, 214 Ark. 688, 217 S.W.2d 620, 621; First National Bank of Duncan v. Wallace, 191 Okl. 105, 127 P.2d 156, 158; Posselius v. First National Bank, supra; See also,

National Bank of Wilmington & Brandywine v. Furtick, supra.

14. Newport v. Semones, 39 Tenn.App. 647, 286 S.W.2d 876, 880; J. T. Sinclair Co. v. I. T. Becker Coal Co., supra; Coller v. Sheffield Farms Co., 129 Misc. 600, 223 N.Y.S. 305, 310; Davis Brothers v. Choctaw O. & G.R. Co., 73 Ark. 120, 83 S.W. 318, 319; Central Trust Co. of New York v. Chattanooga, R. & C.R. Co., 6 Cir., 68 F. 685, 687; See also, Dean v. Opdycke, 151 Wash. 504, 276 P. 545, 546.

15. Davis Brothers v. Choctaw O. & G.R. Co., supra; Coller v. Sheffield Farms Co., supra.

16. Squire v. Capoeman, 351 U.S. 1, 6, 7, 76 S.Ct. 611, 100 L.Ed. 883; Haley v. Seaton, 108 U.S.App.D.C. 257, 281 F.2d 620, 623; Arenas v. Preston, 9 Cir., 181 F.2d 62; United States v. Oregon Short Line R. Co., 9 Cir., 113 F.2d 212, 214; Big Eagle v. United States, 300 F.2d 765, 156 Ct.Cl. 665; United States v. Gilbertson, 7 Cir., 111 F.2d 978, 980.

suit as not applying to suits on liabilities arising out of private transactions would defeat the very purpose of Congress in not relaxing the immunity, namely, the protection of the interests and property of the tribes and the individual Indians. The Supreme Court has not hesitated to hold the immunity applicable in actions for liabilities arising out of private transactions.[17]

We conclude the Seminole Tribe was immune from the garnishment proceeding. It becomes unnecessary to pass on the claim of the United States to a prior lien on the deposit.

Affirmed.

17. United States v. United States Fidelity & Guaranty Co., supra; Williams v. Lee, supra.