[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION TO DISMISSTHE DEFENDANTS' COUNTERCLAIM
The sole issue involved in this decision is whether the defendants' pursuit of its counterclaim is barred by the Mashantucket Pequot Indian Tribal Sovereign Immunity.
The issue arises in a factual and procedural setting which began when on August 3, 1993 the plaintiffs, Mashantucket Pequot Gaming Enterprise ("Enterprise") and William Morehead, filed a two count complaint against the defendants, CCi, Inc. ("CCi") and Edward DeMuzzio, the president of CCi, seeking temporary and permanent injunctive relief. The plaintiffs allege the following facts. The Enterprise, a division of the Mashantucket Pequot Indian Tribe ("Tribe"), had purchased computer-related services from CCi in connection with establishing payroll and other business accounts for Foxwoods Casino. The amount due for those CT Page 7281 services is in dispute. To prepare the computerized accounting system, the Enterprise provided to CCi confidential and personal information concerning the employees of Foxwoods Casino.
On approximately June 18, 1993, the defendants notified Richard Hayward, Chairman of the Tribe, that they intended to sell this information unless instructed otherwise. Despite repeated communications from the Enterprise, the defendants' attorney did not advise the defendants not to distribute the information. Subsequently, the defendants advised the Enterprise that they planned to mail letters to 500 randomly selected employees of Foxwoods Casino notifying them of CCi's plan to sell the information. The Enterprise alleges that distribution of the information would violate protected privacy interests of the employees of Foxwoods Casino.
In count two, Morehead, an employee of Foxwoods Casino, alleges that any disclosure of the personal and confidential information now in the possession of the defendants would constitute an invasion of privacy. Accordingly, the plaintiffs seek injunctive relief prohibiting disclosure of the information.
On August 4, 1993, the defendants filed an answer and special defense in which they assert that the plaintiffs cannot seek relief in state court unless the Tribe agrees to waive all claims of lack of jurisdiction and sovereign immunity regarding activities of the Enterprise. Also on August 4, 1993, the defendants filed a six count counterclaim against the Tribe[1] alleging violation of the Connecticut Uniform Trade Secrets Act, General Statutes § 35-51 (b)(2)(b)(ii); computer piracy in violation of General Statutes § 52-570b; fraud; negligent misrepresentation; violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.; and breach of contract. The defendants allege that the Tribe acted through its economic subdivision, the Enterprise.
On September 28, 1993, the Enterprise filed a motion to dismiss the counterclaim on the grounds that the court lacked subject matter jurisdiction over a claim by a non-Indian against an Indian tribe, and that any action against the Tribe is barred by sovereign immunity. The Enterprise also filed a supporting memorandum of law and the affidavit of Hayward. On CT Page 7282 October 5, 1993, the defendants filed a "memorandum in opposition to the motion for preliminary injunction" which addressed the issues raised in the defendants' special defense. On November 22, 1993, the Enterprise filed a reply memorandum to defendants' memorandum in opposition to the motion to dismiss. On December 8, 1993, the defendants filed an objection to the motion to dismiss accompanied by memorandum of law. On March 28, 1994, the defendants filed a supplemental memorandum of law along with a copy of a memorandum of decision by Judge Purtill in State v. Spears, and a stipulation of facts for the purpose of the motion to dismiss only.
The stipulation of facts for purposes of plaintiffs' motion to dismiss contains, among other things, the following facts:
1. The Mashantucket Pequot Tribe is a federally recognized tribe by Act of Congress known as the Mashantucket Pequot Indian Claims Settlement Act passed in 1983 and codified at 25 U.S.C. § 1751 et. seq. A copy of the Act is attached and incorporated by reference.
2. The five person Mashantucket Pequot Tribal Council is the governing entity of the Tribe. The Mashantucket Pequot Tribal Council is constituted pursuant to the Constitution and By-Laws of the Mashantucket Pequot Indian Tribe as adopted on the 1st day of November, 1987. Copies of the Constitution and By-Laws are attached and incorporated by reference. The power of the Tribal Council is set forth in Article IX of the Constitution. The Tribal Council has the authority to do "any and all acts necessary or proper to the carrying on of the Mashantucket (Western) Pequot Tribe and the management of its affairs. They may establish rules and regulations for their own government and for the transaction of their business, property and funds, and generally shall, during their terms of office, have the full management, control and disposal of the affairs, property and funds of the Tribe, to do all matters and things which the Tribe should do." The Tribal Council has the power to waive sovereign immunity and has done so in the Mashantucket Pequot Sovereign Immunity Waiver Ordinance No. 011092-01. A copy of the Ordinance is attached hereto and incorporated by reference.
3. The Mashantucket Pequot Gaming Enterprise is an CT Page 7283 unincorporated division of The Mashantucket Pequot Tribe established by Mashantucket Pequot Tribal Resolution 022591-02 on February 25, 1991. A copy of the Resolution is attached and incorporated by reference. The Mashantucket Pequot Gaming Enterprise operates the Foxwoods High Stakes Bingo and Casino, a for profit business located on the Mashantucket Pequot Reservation. The Reservation is located in the State of Connecticut adjacent to the Towns of Ledyard, North Stonington and Preston, Connecticut.
4. Resolution 022591-02 provides, inter alia, that the Enterprise shall be managed by a Board of Directors appointed by the Tribal Council. Members of the Board of Directors and the President and Chief Executive Officer of the Enterprise "shall be deemed officers of the Tribal government and shall. be immune from suit when acting in their official capacity to the maximum extent permitted by law with respect to officers of the Tribe."
5. Under Resolution 022591-02 the Enterprise exercises, subject to the paramount authority of the Tribal Council and to the regulatory authority of the Mashantucket Pequot Tribal Gaming Commission, control and authority over those assets of the Tribe which have been dedicated to the development of the business of the Enterprise which shall consist of the Tribe's right, title and interest in specifically defined property designated "Assets of the Enterprise."
6. Resolution 022591-02 defines the "Assets of the Enterprise" to include, inter alia, all income earned by operation of the Bingo Hall and the Casino "including all current assets, cash, investments, accounts receivable, and funds held in the account of the Enterprise, together with proceeds thereof including any assets acquired by expenditure of such funds" prior to the transfer of those funds to the general funds or other accounts of the Tribe.
7. Resolution 022591-02 affirmatively waives sovereign immunity in connection with certain types of contracts entered into by the Enterprise. The waiver of immunity only extends as far as the Assets of the Enterprise. No cause of action seeking to enforce an "express contract or instrument" of the Enterprise may be brought in the Tribal Courts, however, the tribe having irrevocably prohibited the exercise of jurisdiction over such causes of action by the tribal forum. CT Page 7284 Resolution 022591-02 also states:
 With respect to suits, actions or other proceedings within the scope of this waiver of immunity, the Board is further empowered to sue and be sued in the name of the Enterprise; provided, however, that the power to sue and be sued shall extend only to actions on express contracts and instruments as set forth in this paragraph and shall not constitute a waiver of the sovereign immunity of the Tribe, including the Enterprise, for any other purpose or action.
8. Resolution 022591-02 authorizes the Board of Directors of the Enterprise to provide in its bylaws for indemnification by the Enterprise of "its Directors, officers and employees, from any personal liability which they may incur when acting in such capacities and within the scope of their respective authority, in the absence of willful misconduct."
 The Tribe hereby waives any and all defenses otherwise available to the Tribe based upon its sovereign immunity from suit with respect to any action against the Tribe in any forum seeking to enforce the obligations of the Enterprise with respect to such provisions for indemnification as are adopted by the Board of Directors and set forth in the Bylaws of the Enterprise; provided, however, that such waiver is expressly limited to enforcement of such obligations against the Assets of the Enterprise and not to any other property or income of the Tribe; . . .
9. By-laws enacted in connection with the establishment of the Mashantucket Pequot Gaming Enterprise provide for indemnification in connection with civil suits for those persons who may have been a "Director, officer, employee or agent of the Enterprise" against "expenses, including attorney's fees, judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with the actions, suit or proceeding; provided that no indemnification shall be provided for any person with respect to any matter as to which he shall have been finally adjudicated in any action, suit or proceeding not to have CT Page 7285 acted in good faith in the reasonable belief that his action was in the best interest of the Enterprise . . ."
10. In the "Tribal-State Compact" between the State of Connecticut and the Mashantucket Pequot Tribe, the Tribe agreed to provide a tort remedy for patrons of the Enterprise operations.
 The Tribe will establish reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities. The Tribe shall not be deemed to have waived its sovereign immunity from suit with respect to such claims by virtue of any provision of this Compact, but may adopt a remedial system analogous to that available for similar claims arising against the state or such other remedial system as may be appropriate following consultation with the State gaming agency.
11. The Sovereign Immunity Waiver Ordinance number 011092-01 adopted January 10, 1992 waives the immunity of the Mashantucket Pequot Tribe in a limited fashion for injuries resulting from the operation of the Gaming Enterprise so long as, inter alia, the injury caused by the act of an employee of the Enterprise occurred within the scope of his or her authority on the Gaming Enterprise site. A copy of this Ordinance is attached and incorporated herein by reference. Section four states:
(a) The sovereign immunity of the tribe shall continue except to the extent that it is expressly waived by this ordinance. Members of the tribal council remain immune from suit for actions taken during the course and within the scope of their duties as members of the tribal council.
(b) The Gaming Enterprise may be sued solely in the Mashantucket Pequot Tribal Court/Gaming Enterprise Division. The tribe has not waived the immunity of the Gaming Enterprise from suit in state or federal court.
(c) The sovereign immunity of the Gaming Enterprise is waived in the following instances:
(1) Injuries proximately caused by the negligent CT Page 7286 acts or omissions of the Gaming Enterprise;
 (2) Injuries proximately caused by the condition of any property of the Gaming Enterprise provided the claimant establishes that the property was in a dangerous condition;
 (3) Injuries caused by the negligent acts or omissions of tribal security officers arising out of the performance of their duties during the course and within the scope of their employment.
Section seven states:
 This ordinance does not immunize employees of the Gaming Enterprise from individual liability for the full measure of the recovery applicable to a claimant if it is established that their conduct exceeded the scope of their employment or authority. Claims for individual liability arising out of conduct which is found to exceed the scope of employment and which arise on the Gaming Enterprise site shall be heard only in the tribal court.
12. On January 11, 1993, the Mashantucket Pequot Tribal Council resolved by Resolution E 11193-02 to "retain criminal and civil jurisdiction within the boundaries of the Reservation to the maximum extent possible."
13. In connection with the limited sovereign immunity waiver, the Mashantucket Pequot Tribal Council also created The Mashantucket Pequot Tribal Court by ordinance number 0011092-02 on January 10, 1993. The Mashantucket Pequot Tribal Court has civil jurisdiction to decide tort causes of action arising on the Reservation involving actions brought seeking damages for personal injury to the extent allowed by the Sovereign Immunity Waiver Ordinance.
14. Section 12 of the Tribal Court Ordinance number 011092-02 states that "The tribal court shall not exercise jurisdiction over any action arising from a contract to which the Tribe is a party or by which it is bound if such contract contains an express provision prohibiting the exercise of jurisdiction by the tribal court over actions arising from CT Page 7287 such contract, whether approved prior to or subsequent to the enactment of this ordinance." No other statement regarding "contract actions" is made in Ordinance 011092-02.
15. The Mashantucket Pequot Tribal Court does not have express jurisdiction to decide the claims brought against the Mashantucket Pequot Gaming Enterprise for breach of contract, theft of trade secrets, violation of Connecticut's Unfair Trade Practice Act, violation of Connecticut's Trade Secrets Act, fraud and negligent misrepresentations alleged to have taken place in North Stonington, Connecticut in CCi, Inc.'s counterclaim.
16. Pursuant to Ordinance Number 113093-03, on November 30, 1993, the Mashantucket Pequot Tribal Council declared its intention to exercise criminal jurisdiction over matters that arise on the Mashantucket Tribal Nation Lands. Section 11 of that Ordinance waives tribal sovereign immunity "for any action taken by the Tribal Police alleging a violation of the Indian Civil Rights Act provided the alleged violation occurred within the Nation Lands." Section 11 also provides that the Tribal Court shall have exclusive jurisdiction to hear these claims, except as otherwise provided by federal law.
17. The Mashantucket Pequot Tribal Council does have authority to waive sovereign immunity on a case by case basis for claims made against The Mashantucket Pequot Gaming Enterprise.
18. On December 10, 1993, CCi, Inc. forwarded a petition for payment of its claim or waiver of immunity to The Mashantucket Pequot Tribal Council. After setting forth the basis for its claim, CCi, Inc. petitioned The Mashantucket Pequot Tribal Council to pay CCi's claim in the amount of $146,000.00, plus $30,000.00 in attorney's fees for a total of $176,000.00, or in the alternative, to agree to instruct The Mashantucket Pequot Gaming Enterprise to waive the claim to sovereign immunity and participate in resolution of CCi, Inc.'s dispute in state court, be bound by the decision therein and pay CCi, Inc. the amount due in accordance with the judgment.
19. On or about January 1994, the Mashantucket Pequot Tribal Council considered and denied the relief sought by CCi, CT Page 7288 Inc. in its petition.
20. On more than one occasion, The Mashantucket Pequot Tribe has instructed its agents and employees to assert the defense of sovereign immunity for tort claims, prior to the creation of The Mashantucket Pequot Tribal Court and the limited Sovereign Immunity Waiver Ordinance.
21. The Mashantucket Pequot Tribe instructed its agents and employees to commence an action against CCi, Inc. in the Superior Court of the State of Connecticut seeking preliminary injunctive relief. The Tribe obtained said relief after hearing by order of Judge Hendel in October of 1993.
22. The Mashantucket Pequot Tribe has instructed its agents and employees to assert the defense of sovereign immunity and lack of jurisdiction against CCi, Inc.'s counterclaim brought in response to The Mashantucket Pequot Gaming Enterprise's action for damages, attorney's fees and injunctive relief.
23. The Mashantucket Pequot Gaming Enterprise generates between $20 and $30 million per month in revenue from the" operation of the slot machines on the Reservation and has agreed to pay 25% of gross slot revenue to the State of Connecticut.
24. Commencing on November 8, 1991 through approximately March 15, 1992 CCi, Inc. sold to the Mashantucket Pequot Gaming Enterprise Varnet software programs and related services. The Mashantucket Pequot Gaming Enterprise paid CCi, Inc. for some of the software but has refused to pay CCi, Inc. additional sums claimed by CCi, Inc. as set forth above in paragraph 18.
25. Services and software were requested by employees of the Mashantucket Pequot Gaming Enterprise including Alan Zorner, the Director of Information Management and Jeffrey Hartmann, the Director of Financial Accounting.
26. It is the claim of CCi, Inc. that the evidence may show that Zorner and Hartmann were not acting at times within the scope of their authority and that at times their actions, were not permitted by law. CT Page 7289
27. The Mashantucket Pequot Gaming Enterprise admits that approximately sixty (60%) percent of the services performed by CCi, Inc. were performed at offices leased by the Tribe in North Stonington, Connecticut pending construction and completion of facilities on the Reservation. Upon completion of construction of suitable facilities on the Reservation, the software was moved to its present facility on the Reservation. CCi, Inc.'s employees also provided some portion of its services on the Reservation.
28. The software sold by CCi, Inc. was delivered to the. Tribe's offices in North Stonington and installed on computers there. The software included modules for operation of a general ledger, payroll, employee master file, fixed assets, accounts receivable and accounts payable. Payroll for the operation of The Mashantucket Pequot Gaming Enterprise was generated at North Stonington using the software and services sold by CCi, Inc. for a period of time.
"In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff. . . ." Practice Book § 116. Counterclaims have been filed in cases in" which the plaintiff seeks injunctive relief. See, e.g.,Hartford Electric Light Co. v. Levitz, 173 Conn. 15,376 A.2d 381 (1977); Hall v. Altomari, 19 Conn. App. 387, 562 A.2d 574
(1989).
SUBJECT MATTER JURISDICTION
The parties have briefed and argued the question whether this court has subject matter jurisdiction adjudicate this controversy, and have brought to the court's, attention a decision relating to the question of the state court's jurisdiction over criminal matters relating to the Mashantucket Pequot Tribe. However, because the issue relating to indian tribal sovereign immunity is found to be determinative, the court, in an effort to eschew unnecessary determinations, will not address the question with regard to civil jurisdiction.
SOVEREIGN IMMUNITY
The Enterprise asserts that the counterclaim is barred by the doctrine of sovereign immunity. The defendants contend that, although the Tribe may claim sovereign immunity, the CT Page 7290 Enterprise is a commercial subdivision that is not immune from suit in state court.
The doctrine of sovereign immunity is properly raised on a motion to dismiss. Amore v. Frankel, 228 Conn. 358, ___ A.2d ___ (1994). "The issue of tribal sovereign immunity is jurisdictional in nature." McClendon v. United States,885 F.2d 627, 629 (9th Cir. 1989), citing Chemehuevi Indian Tribev. California State Board of Equalization, 757 F.2d 1047, 1051
(9th Cir. 1985).
"Because they are sovereign entities, Indian tribes are immune from unconsented suit in state or federal court."McClendon v. United States, supra, 885 F.2d 629, citing SantaClara Pueblo v. Martinez, 436, U.S. 49, 58, 98, S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). Although Indian tribes can waive their sovereign immunity any waiver cannot be implied; it must be expressed unequivocally. Santa Clara Pueblo v.Martinez, supra, 436 U.S. 58.
In 1992, as stipulated above, the Tribe enacted the Mashantucket Pequot Sovereign Immunity Waiver Ordinance which provides that the Tribe has waived sovereign immunity for several types of suit against the Enterprise: (1) injuries caused by the negligence of the Enterprise; (2) injuries caused by property of the Enterprise that is in a dangerous condition; and (3) injuries caused by negligence of tribal security officers acting within the scope of their employment. The Enterprise may only be sued in the Mashantucket Pequot Tribal Court; sovereign immunity has not been waived for any action in state or federal court. Ordinance No. 011092-01 of the Mashantucket Pequot Tribal Council.
In addition to the Sovereign Immunity Waiver Ordinance, the Tribe created the Mashantucket Pequot Tribal Court. The ordinance establishing the court states:
 The tribal court shall not exercise jurisdiction over any action arising from a contract to which the Tribe is a party or by which it is bound if such contract contains an express provision prohibiting the exercise of jurisdiction by the tribal court over actions arising from such contract, whether approved prior to or subsequent to the enactment of this ordinance. CT Page 7291
Ordinance No. 011092-02 of the Mashantucket Pequot Tribal Council.
Furthermore, the ordinance creating the Enterprise also "waives any and all defenses otherwise available to the Tribe based upon its sovereign immunity from suit with respect to any action against the tribe in any forum seeking to enforce the obligations of the Enterprise" upon an express contract. Resolution No. 022591-02 of the Mashantucket Pequot Tribal Council, ¶ 4(c).
The Tribe has not expressly waived its sovereign immunity in this action because there are no allegations of an express
contract between CCi and the Enterprise.
The defendant CCi argues for a different result because the issue arises where the tribe is a plaintiff and raises sovereign immunity as a bar to the counterclaim.
 "Initiation of a lawsuit necessarily establishes consent to the court's adjudication of the merits of that particular controversy. By initiating [an] action, the Tribe accepted the risk that it would be bound by an adverse determination. . . . However, the `terms of [a sovereign's] consent to be sued in any court define that court's jurisdiction to entertain the suit.' Jicarilla Apache Tribe v. Hodel, 821 F.2d 537, 539 (10th Cir. U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). Thus a tribe's waiver of sovereign immunity may be limited to the issues necessary to decide the action brought by the tribe; the waiver is not necessarily broad enough to encompass related matters, even if those matters arise from the same set of underlying facts."
McClendon v. United States, supra, 885 F.2d 630.
In determining the extent to which sovereign immunity is waived, "any waiver of immunity is to be interpreted liberally in favor of the Tribe and restrictively against the claimant."S. Unique Ltd. v. Gila River Pima-Maricopa Indian Community,138 Ariz. 378, 674 P.2d 1376, 1381 (App. 1983), citingMaryland Casualty Co. v. Citizens National Bank, 361 F.2d 517, CT Page 7292 521 (5th Cir.), cert. denied, 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed[.]2d 143 (1966).
"[T]he tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe." Oklahoma Tax Commission v.Potawatomi Indian Tribe, 498 U.S. 505, 509-10, 111 S.Ct. 905, 112 L.Ed[.]2d 1112 (1991); see also United States v. unitedStates Fidelity Guaranty Co., 309 U.S. 506, 511-12,60 S.Ct. 653, 84 L.Ed.2d 894 (1940) (Indian immunity from suit is not lost by instituting suit, even where the defendant files a compulsory counterclaim); Schaghticoke Indians of Kent,Connecticut, Inc. v. Potter, supra, 217 Conn. 622 n. 9 (unilateral action by a tribe, seeking redress in a state forum, "is insufficient to constitute consent or otherwise give the state jurisdiction").
The defendants argue that a matter of fairness, the court should not entertain the enterprise's action for injunctive relief without also entertaining its counterclaim. This argument is unpersuasive. While questions of "fairness" may well be involved in connection with an analysis of the equitable relief sought in the complaint (see CiticorpMortgage, Inc. v. Burgos, 227 Conn. 116 (1993)), the application of the doctrine of sovereign immunity, where it exists, is not a discretionary matter. "[S]overeign immunity is not a discretionary doctrine that may be applied as a remedy depending on the equities of a given situation."Chemehuevi Indian Tribe v. California State Board ofEqualization, 800 F.2d 1446, 1051 (9th Cir. 1985), cert. denied, 481 U.S. 1051, 107 S.Ct. 2184, 95 L.Ed.2d 840
(1987). Because an Indian tribe may invoke the doctrine of sovereign immunity, "businesses that deal with Indian tribes do so at great financial risk." S. Unique Ltd. v. Gila RiverPima-Maricopa Indian Community, supra, 674 P.2d 1384-85. Also, CCi could have taken steps to ensure that any dispute, with the Enterprise could have been heard in state court. See Resolution No. 022591-02 of the Mashantucket Pequot Tribal Council, ¶ 4(c) in which the, tribe waives sovereign immunity in actions on express contracts.
Moreover, when asked to undertake a review of the "multifarious political, economic and social considerations that usually underlie. . . ." such policy matters trial courts CT Page 7293 have been admonished to exercise "great causion and restraint." See State v. Rao, 171 Conn. 600, 606 (1976).
Immunity from liability is not a novel concept nor one which is limited to indian tribes. It applies variously to state governments (Lussier v. Department of Transportation,228 Conn. 343 (1994)); municipal governments (Gajewski v.Pavelo, 32 Conn. App. 373 (1993)); diplomats (Fernandez v.Fernandez, 208 Conn. 329 (1988) and parents with regard to their children (Dubay v. Irish, 207 Conn. 518 (1988). See also Sovereign Immunity in Connecticut, Carolyn Birmingham, 13 Conn. L.R. 293 (1981).
Finally, the defendants argue that because the Enterprise is a commercial subdivision of the Tribe, rather than the Tribe itself, the doctrine of sovereign immunity is inapplicable. The defendants rely on Padilla v. Pueblo ofAcoma, 107 N.M. 174, 754 P.2d 845 (1985), cert. denied,490 U.S. 1029 (1989), to support their position. That case is factually distinct. In Padilla v. Pueblo of Acoma, The court held that the sovereign immunity of the tribe did not extend to business conduct engaged in by the tribe off its reservation. Therefore, the state court could exercise jurisdiction over a breach of contract action arising from this off-reservation activity. Id., 850.
In Padilla v. Pueblo of Acoma, however, the economic subdivision of the tribe was registered to do business as a contractor in New Mexico and was engaged in a commercial venture off the reservation. In the present case, although the Enterprise had leased office space off the reservation, the commercial venture, Foxwoods Casino, was located on the reservation. The computer programs designed by CCi were to be used in conjunction with this on-reservation activity.
Furthermore, not all states agree with the view of New Mexico. For example the Arizona Supreme Court has applied the doctrine of sovereign immunity to an Indian tribe that had allegedly committed a tort while engaged in a business enterprise within the state of Arizona but outside tribal boundaries; Morgan v. Colorado River Indian Tribe, 103 Ariz. 425,443 P.2d 421, 423-24 (1968); and to a subordinate business enterprise of a tribe in a breach of contract suit.White Mountain Apache Indian Tribe v. Shelley, 107 Ariz. 4,480 P.2d 654, 657 (1971). CT Page 7294
"[I]t would defeat the purpose of Congress in granting immunity to Indian Tribes were we to treat a subordinate economic organization of an Indian tribe as governmental corporations or federal instrumentalities are treated." Id. The fact that an Indian tribe is "engaged in an enterprise, private or commercial in character, rather than governmental, is not material. It is in such enterprises and transactions that the Indian tribes need protection." Maryland Cas. Co. v.Citizens Nat. Bank of West Hollywood, 361 F.2d 517, 521 (5th Cir. 1966).
Based upon this analysis it is found that the Enterprise, an economic subdivision of the Tribe, may invoke sovereign immunity.
The doctrine of sovereign immunity of the Mashantucket Pequot Tribe bars the counterclaim. Accordingly, the court grants the Enterprise's motion to dismiss the counterclaim.
Leuba, J.