621 F.2d 358
 Tom S. JOE, Plaintiff-Appellee,
v.
Honorable Roy MARCUM, Magistrate, Division II, San Juan
County, New Mexico; USLife Credit Corporation, a New Mexico
Corporation; and Utah International, Inc., a Delaware
Corporation, Defendants-Appellants.
 Nos. 78-1912, 78-1932.
 United States Court of Appeals,
Tenth Circuit.
 Argued Jan. 24, 1980.
Decided May 16, 1980.
 
 Richard B. Collins, Boulder, Colo. (Timothy V. Flynn-O'Brien, Judy A. Flynn-O'Brien, and Earl R. Mettler, Shiprock, N. M., with him, on brief), for plaintiff-appellee.
 Thomas L. Dunigan, Deputy Atty. Gen., Santa Fe, N. M. (Jeff Bingaman, Atty. Gen., and Anthony P. Marquez, Asst. Atty. Gen., Santa Fe, N. M., with him, on brief), for Honorable Roy Marcum, defendant-appellant.
 R. Thomas Dailey of Dailey & Cardin, P. C., Farmington, N. M., for USLife Credit Corporation, defendant-appellant.
 James W. Moorman, Asst. Atty. Gen., Edward J. Shawaker, and Joshua I. Schwartz, Attys., Dept. of Justice, Washington, D. C., on brief, for United States as amicus curiae.
 Genevieve K. Chato, Legal Department, The Navajo Tribe, Window Rock, Ariz., on brief, for Navajo Tribe as amicus curiae.
 Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 Garnishment proceedings to enforce a $247.35 default judgment trigger the present proceeding, which involves, among other things, the United States Constitution, the Navajo Treaty of 1868, the New Mexico Enabling Act, the Civil Rights Act of 1968, and Navajo Tribal Statutes. The facts are simple, though the legal issues are not.
 
 
 2
 Tom S. Joe is a Navajo Indian who resides on the Navajo Indian Reservation at Shiprock, New Mexico. Joe borrowed money from USLife Credit Corporation, a New Mexico corporation. This transaction occurred in Farmington, New Mexico, which is outside the Navajo Indian Reservation. Joe apparently defaulted in repayment of the loan, and USLife brought a breach of contract action against him in the Magistrate Court of the Honorable Roy Marcum at Farmington, New Mexico. Service of process was made. Joe did not respond to the summons and complaint, and a default judgment was entered against him in the amount of $247.35. The validity of this default judgment is not in issue.
 
 
 3
 Utah International, Inc., is a Delaware corporation qualified to do business in New Mexico. Utah International operates a strip mine, known as the Navajo Mine, located on the Navajo Indian Reservation near Fruitland, New Mexico. Utah International maintains its offices on the Navajo Reservation. Joe is employed by Utah International and works at the Navajo Mine.
 
 
 4
 In an effort to enforce its judgment against Joe, USLife caused a writ of garnishment to issue out of Judge Marcum's court. Utah International was the named defendant in the garnishment proceeding. The garnishee summons was served on Utah International at its offices on the Navajo Reservation. Under New Mexico law, up to 25% of Joe's weekly salary was subject to garnishment under the writ issued by Judge Marcum.
 
 
 5
 It was in this general setting that Joe sought relief in the United States District Court for the District of New Mexico. Specifically, Joe brought suit against Marcum, USLife Credit Corporation, and Utah International, Inc. Joe asked for declaratory judgment and injunctive relief, alleging that Judge Marcum had no jurisdiction to garnish, or otherwise attach, wages due him and then in the possession of Utah International. It was further alleged that the garnishment of wages due Joe from Utah International for the use of USLife constituted a deprivation of property without due process of law, and, having been done under the color of state law, was contrary to 42 U.S.C. § 1983.
 
 
 6
 The case was presented to the United States District Court on an agreed statement of facts. Based on the pleadings, and the stipulated facts, Joe moved for summary judgment. The district court granted the motion, and entered judgment in favor of Joe. More specifically, the defendants were permanently enjoined from enforcing the writ of garnishment issued by Judge Marcum, and served on Utah International, attaching wages earned by Joe from his employment on the Navajo Reservation with Utah International. Both Judge Marcum and USLife now appeal.
 
 
 7
 The district court entered summary judgment in favor of Joe, thereby indicating that there were no genuine issues of material facts. The court nonetheless made certain findings of fact, as well as conclusions of law. Be that as it may, the basis for the district court's action is contained in paragraph 7 of its findings and conclusions. That paragraph reads as follows:
 
 
 8
 7. The Magistrate Court lacked jurisdiction to issue the writ of garnishment herein because of federal pre-emption of the field: Applicable federal treaties and statutes reserve to the Navajos the right to make and be governed by their own laws, and the State of New Mexico cannot empower its courts to encroach upon the right.
 
 
 9
 Joe's complaint as filed in federal district court alleged jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983. In the federal district court no challenge was made to the jurisdiction of the court over the subject matter involved. In this Court, however, one of the two appellants, Marcum, contends that there is lack of federal jurisdiction. The argument, as we understand it, is that Joe's constitutional due process claim is in reality based on a statutory pre-emption claim, and that since the latter involves the Supremacy Clause of the United States Constitution, such fact renders 28 U.S.C. § 1343 inapplicable. In support of this argument counsel relies on Douglas v. Seacoast Products, Inc., 431 U.S. 265, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977) and Justice Rehnquist's dissent in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). We fail to see how those cases support Marcum's jurisdiction argument. We believe that the rationale of the majority opinion in Hagans, as well as the holding of Douglas, supports our conclusion that the federal district court had subject matter jurisdiction.
 
 
 10
 In addition to relying on 28 U.S.C. § 1343 and 42 U.S.C. § 1983, Joe also asserts that he was denied his constitutional right to due process of law since he was about to be deprived of his wages by a court that had no jurisdiction to so do. Joe's argument that Judge Marcum lacked jurisdiction to garnishee his wages resulting from on-reservation labor, and payable to him at his job-site, is based, in part, on the Commerce Clause and the Treaty Clause of the United States Constitution. Additionally, Joe also relies, in part, on the Civil Rights Act of 1968, 25 U.S.C. §§ 1321-1326. He contends that New Mexico has not complied with the provisions therein, to the end that federal subject matter jurisdiction could also be based on the equitable grounds set forth in 28 U.S.C. § 1343(4). In short, we reject the belated claim that there is a lack of jurisdiction over the subject matter of this proceeding.
 
 
 11
 On the merits of the case, we conclude that the action of the federal district court was correct. In thus holding, we recognize that there is authority to the contrary, and that an argument can be made that Joe should not be allowed to use the Navajo Reservation as a sanctuary to insulate himself from state court garnishment proceedings arising from an off-reservation transaction with a non-Indian lending agency. In our view, however, this argument does not withstand close analysis, as it overlooks the central and dominant factor here involved, namely, that to allow the present garnishment proceeding to stand would impinge upon tribal sovereignty.
 
 
 12
 25 U.S.C. § 1322, a part of the Civil Rights Act of 1968, provides a method whereby a state may assume jurisdiction of civil causes of action between Indians, or to which Indians are parties, which arise in areas of Indian country, with the consent of the tribe. In the instant case New Mexico has not sought to assume such jurisdiction. However, according to the appellants, any failure by New Mexico to thus assume jurisdiction is not dispositive of the controversy. It is argued that the local New Mexico state court nonetheless had jurisdiction to run the present garnishment, and that such did not in any wise impinge on tribal sovereignty. It is with this line of argument that we are not in accord.
 
 
 13
 The basic tenet of the Navajo Treaty of 1868 is that the Navajo Tribe is a sovereign entity and that, upon the reservation, the tribe possesses the right of self-government. This fundamental tenet, which is reinforced by applicable federal statutes, is the basis for our conclusion that state jurisdiction of the sort sought to be exercised here has been pre-empted. In thus holding, we recognize that the doctrine of tribal sovereignty is not an absolute, but we do believe this doctrine controls the present fact situation.
 
 
 14
 We are advised that the Navajo Tribe has its own scheme of self-government, which includes a judicial branch consisting of six district courts, a Court of Appeals, and a Supreme Judicial Council. The Navajo Tribal Code permits enforcement of judgments obtained in tribal courts by execution upon specific property owned by the judgment debtor. However, the Navajo Tribal Code does not permit the garnishment of wages. The fact that the Tribal Code provides methods of post-judgment enforcement, but not garnishment, is in our view significant.
 
 
 15
 Garnishment is a statutory remedy, which does not exist at common law. Whether wages should be subject to garnishment is a matter upon which there is no unanimity of thought. Some states, New Mexico included, permit garnishment of wages. Other states do not. Similarly, a sovereign entity such as the Navajo Tribe need not provide garnishment, if it so chooses. As indicated, such is the Navajo policy, as the tribal code does not provide for garnishment, although it does provide other means of enforcing judgments. Under such circumstances, to permit a state court of New Mexico to run a garnishment against Utah International, on the reservation, and attach wages earned by Joe for on-reservation labor, would thwart the Navajo policy not to allow garnishment. Such impinges upon tribal sovereignty, and runs counter to the letter and the spirit of the Navajo Treaty of 1868, the New Mexico Enabling Act, and other applicable federal statutes.
 
 
 16
 We believe our disposition of this appeal to be in line with the pronouncements of the Supreme Court in such benchmark cases as McClanahan v. Arizona Tax Commissioners, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), Kennerly v. District Court, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971), and Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). In Williams, a non-Indian operated a general store on the Navajo Indian Reservation in Arizona. He brought an action in an Arizona state court against a Navajo Indian to collect for goods sold on credit. The transaction sued on occurred on the reservation. The defendant moved to dismiss on the ground that jurisdiction lay in the tribal court rather than the state court. The motion was denied, and judgment entered against the Navajo defendant. On appeal, the Arizona State Court affirmed. On certiorari, the United States Supreme Court reversed. In reversing, the Supreme Court commented as follows:
 
 
 17
 There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves. It is immaterial that respondent is not an Indian. He was on the Reservation and the transaction with an Indian took place there. Cf. Connelly v. United States, supra, Williams v. United States, supra. The cases in this Court have consistently guarded the authority of Indian governments over their reservations. Congress recognized this authority in the Navajos in the Treaty of 1868, and has done so ever since. If this power is to be taken away from them, it is for Congress to do it. Lone Wolf v. Hitchcock, 187 U.S. 553, 564-566 (23 S.Ct. 216, 220-221, 47 L.Ed. 299).
 
 
 18
 In Kennerly, suit was commenced in a Montana state court by a non-Indian against members of the Blackfeet Tribe for a debt arising out of a transaction occurring on the reservation. A motion to dismiss on the ground that the state court lacked jurisdiction because the defendants were members of the Blackfeet Tribe and because the transactions sued on took place on the Indian reservation, was denied. The Montana Supreme Court affirmed. On certiorari, the Supreme Court reversed. In reversing, the Supreme Court held that the State of Montana, not having complied with either the provisions of § 7 of the Act of August 15, 1953, 67 Stat. 590, or Title IV of the Civil Rights Act, did not have jurisdiction over the case. In the instant case, also, there has been no compliance with applicable federal statutes regarding state assumption of civil jurisdiction over transactions occurring on an Indian reservation.
 
 
 19
 In McClanahan, the Supreme Court held that the State of Arizona had no jurisdiction to impose a tax on the income of Navajo Indians residing on the Navajo Reservation where the income is wholly derived from reservation sources, citing in support thereof the relevant treaty with the Navajos and the implementing federal statutes.
 
 
 20
 The appellants' continuing argument in this Court is that the garnishment proceeding is merely ancillary to the default judgment entered against Joe in the New Mexico state court, and that since there is no challenge to the validity of the default judgment against Joe, it necessarily follows that the New Mexico state court has jurisdiction to pursue the garnishment proceedings through to conclusion. We do not agree with this reasoning, though such does find support in Little Horn State Bank v. Stops, 170 Mont. 510, 555 P.2d 211 (1976), cert. denied, 431 U.S. 924, 97 S.Ct. 2198, 53 L.Ed.2d 238 (1977). Garnishment proceedings are indeed ancillary proceedings in the sense that they are in aid of a judgment previously obtained. However, such are independent proceedings in the sense that they are against the judgment debtor's employer, to attach wages held by the employer and due the judgment debtor. The subject matter of the present garnishment proceedings is money held by Utah International and due Joe. Utah International was served on the reservation. The garnishment res is located on the reservation and represents wages due for services rendered by Joe to Utah International on the reservation. Under such circumstances, to uphold the present garnishment would thwart the Navajo policy which does not permit garnishment of wages.
 
 
 21
 Annis v. Dewey County Bank, 335 F.Supp. 133 (D.S.D.1971) is quite similar to the instant case. There, Chief Judge Nichol enjoined state officials from enforcing a state judgment by attaching property located on the Cheyenne River Sioux Indian Reservation in South Dakota. In the instant case, the federal district court enjoined the defendants from enforcing a state judgment by garnishing wages which were earned, and in a real sense are "located," on the Navajo Reservation.
 
 
 22
 Judgment affirmed.