CHEROKEE NATION, Plaintiff,

v.

NATIONS BANK, N.A., Defendant.

No. 99–308–S.

United States District Court,
E.D. Oklahoma.

July 15, 1999.

Rex Earl Starr, Stilwell, OK, Janice Walters Purcell, Tahlequah, OK, for plaintiff.

Joel W. Harmon, Joe E. Edwards, Oklahoma City, OK, for defendant.

## ORDER

SEAY, District Judge.

The Cherokee Nation instituted this federal court action against NationsBank, N.A. ("the Bank"), contesting garnishment proceedings brought in state and tribal court by various judgment creditors. It is alleged that this court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a) (diversity), 1362 (actions brought by Indian tribes arising under the Constitution, laws, or treaties of the United States), and 1331 (federal question). The Cherokee Nation seeks damages for the alleged wrongful garnishments and an order from this court staying the release of funds from its account with the Bank. Further, the Cherokee Nation seeks an order directing the Bank to release funds held in suspense accounts back into the Cherokee Nation's accounts. On June 25, 1999, the court denied the Cherokee Nation's request for a temporary restraining order and set the request for preliminary injunction for hearing on June 28, 1999. With the parties' consent, the court consolidated the hearing on the preliminary injunction with a trial of the action on the merits. Fed. R.Civ.P. 65(a)(2). Having considered the evidence and arguments submitted, the court concludes that the Cherokee Nation's complaint with respect to the lone state court garnishment should be dismissed with prejudice and that the remaining claims involving the tribal court garnishment proceedings are dismissed without prejudice pursuant to the tribal exhaustion rule.

## I.

The garnishments were filed by the judgment creditors, who are, or were, employees of the Cherokee Nation, to secure funds of the Cherokee Nation on deposit with the Bank in order to satisfy judgments entered in favor of them. Although not conclusively established by any competent evidence, the record suggests that the underlying judgments in favor of the employees arose out of proceedings in the Cherokee Nation Judicial Appeals Tribunal ("JAT") with the exception of the Walker judgment, which appears to have originated in the District Court of Cherokee County, Oklahoma.

At issue are seven separate garnishment proceedings instituted against the Cherokee Nation, with the Bank being the garnishee in each instance:

1. *G. Wayne Walker, Jr. d/b/a NEO Embroidery and Screen Printing v. Cherokee Nation of Oklahoma and Shiela Henson,* No. SC–98–594 (District Court of Cherokee County) (amount of $948.13)

2. *Andrew C. Wilcoxen v. Cherokee Nation of Oklahoma and Joe Byrd,* No. CJ–99–109 (District Court of Cherokee County) (amount of $4,875.00)

3. *William Patrick Ragsdale, et al. v. Cherokee Nation,* No. JAT–97–43–B (Cherokee Nation Judicial Appeals Tribunal) (amount of $13,086.43)

4. *Andrew C. Wilcoxen v. Cherokee Nation of Oklahoma and Joe Byrd,* No. JAT–98–16–B (Cherokee Nation Judicial Appeals Tribunal) (amount of $4,875.00)

5. *Andrew C. Wilcoxen v. Cherokee Nation of Oklahoma and Joe Byrd,* No. JAT–98–16–B (Cherokee Nation Judicial Appeals Tribunal) (amount of $28,000.00)

6. *Sandra Fargo v. Cherokee Nation of Oklahoma,* No. JAT–96–21–K (Cherokee Nation Judicial Appeals Tribunal) (amount of $27,081.88)

7. *Leslie Maddox v. Cherokee Nation of Oklahoma,* No. JAT–97–34–B (Cherokee Nation Judicial Appeals Tribunal) (amount of $31,950.84)

The evidence reveals that the Bank has answered each of the garnishment summons issued in these cases.

In the Walker garnishment, payment in the amount of $948.13 from the Cherokee Nation's account was remitted by the Bank to Walker's attorney pursuant to an order to pay from the District Court of Cherokee County. The Bank answered the remaining garnishments by advising of the Cherokee Nation's objection to the garnishments and by placing the referenced funds in a suspense account until further judicial order. A hearing was conducted by Chief Justice Viles of the JAT in the Wilcoxen garnishments in JAT–98–16–A (Nos. 4 and 5 above). At the conclusion of that hearing, Chief Justice Viles upheld the validity of the subject garnishments. He rejected the Cherokee Nation's claim of sovereign immunity in the context of a suit brought by Wilcoxen, a former tribal judge, in Cherokee tribal court. Chief Justice Viles further held that the JAT's adoption of state procedures for the collection of judgments, JAT Rule 44, encompasses garnishment proceedings. Based on Chief Justice Viles' order, funds were released to Wilcoxen to satisfy the garnishments in JAT–98–16–S with Wilcoxen agreeing to return the money should an en banc hearing result in a reversal.

## II.

■ Under the provisions of 28 U.S.C. § 1331, a federal district court has jurisdiction to determine whether a tribal court has exceeded its jurisdiction. *Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 857, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). A federal court, however, should abstain from exercising jurisdiction over cases arising under its federal question or diversity jurisdiction until the tribal courts have had a full opportunity to consider the issues before them. *Id.* at 856–57, 105 S.Ct. 2447; *Tillett v. Lujan,* 931 F.2d 636, 640–41 (10th

Cir.1991). Thus, under this tribal exhaustion rule the federal court abstains from exercising jurisdiction until tribal remedies have been exhausted. *Enlow v. Moore,* 134 F.3d 993, 995 (10th Cir.1998). Exhaustion in this context "is the result of Congress' 'strong interest in promoting tribal sovereignty, including the development of tribal courts.'" *Id.* (quoting *Smith v. Moffett,* 947 F.2d 442, 444 (10th Cir.1991)).

■ With the exception of the Walker garnishment, all garnishment proceedings are before the JAT for resolution. To date, the JAT, through Chief Justice Viles, has determined in the Wilcoxen garnishments, JAT–98–16–S, that the garnishments are valid and that the doctrine of sovereign immunity raised by the Cherokee Nation has no application in tribal court over matters involving tribal employees. Tribal court remedies, however, have not been exhausted as to these tribal garnishment proceedings, including the Wilcoxen garnishments, in that the proceedings have not been completed through the tribal appellate review process. The United States Supreme Court has ruled that federal courts should refrain from making premature decisions under these circumstances:

> The federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts. At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts.

*Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 16–17, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). It is undisputed herein that tribal law affords the Cherokee Nation with the right of appellate review of Chief Justice Viles' decision before an en banc panel. *See Wilcoxen v. Cherokee Nation of Oklahoma and Nations Bank (Garnishee),* No. JAT–98–16–B (transcript at p. 5, l. 10–25). That appellate process has yet to be completed with respect to the

Wilcoxen garnishments. As to the other tribal garnishments, no tribal court decisions have even been rendered. Consequently, the court finds that the tribal exhaustion rule requires that this court abstain from exercising jurisdiction over the tribal garnishments until tribal remedies have been exhausted through the courts of the Cherokee Nation.

The court rejects the Cherokee Nation's suggestion that the tribal exhaustion rule does not apply because it would be futile to further challenge the garnishments in tribal court. It is true that in *National Farmers Union*, the Supreme Court recognized exhaustion is not required under circumstances where " 'assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith,' or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile." *Id.,* 471 U.S. at 856 n. 21, 105 S.Ct. 2447 (citations omitted). The Cherokee Nation's assertion of the "futility" exception, however, is wholly speculative and made without any foundational support. Moreover, this exception is dependent upon a finding that no tribal court forum exists for resolution of the disputed issues. *Bank of Oklahoma v. Muscogee (Creek) Nation,* 972 F.2d 1166, 1170 (10th Cir.1992). Here, a tribal court forum exists—the Cherokee Nation is currently before its own tribal court actively contesting the subject tribal garnishments and it thus has the ability to seek a resolution of the issues surrounding the garnishment of its funds through the appellate process available within the tribal court. Consequently, no basis for the application of the "futility" exception exists.

■ Turning to the lone garnishment which is not before the JAT—the Walker garnishment [1]—the court initially notes that the tribal exhaustion rule does not apply to state court garnishment proceedings. Thus, no bar is presented to the court's consideration of the Cherokee Nation's claim regarding the Walker garnishment. Having fully reviewed the merits of such claim, the court concludes that such claim should be dismissed with prejudice.

■ Based on the record before it, the court can only conclude that the Walker judgment and garnishment order were validly entered by the District Court of Cherokee County. No evidence has been presented establishing any impediment to the entry of either the judgment or garnishment order by virtue of the Cherokee Nation's assertion of sovereign immunity. In the instant proceeding, however, the Cherokee Nation contests the jurisdiction of the District Court of Cherokee County in issuing the garnishment order to pay $948.13 on the Walker garnishment. It is the position of the Cherokee Nation that, as a sovereign, it is exempt from the application of state garnishment proceedings. The court disagrees and finds no impingement of tribal sovereignty by enforcement of state garnishment proceedings. The adoption by the highest court of the Cherokee Nation of the rules and statutes of the State of Oklahoma concerning enforcement of judgments, including garnishments proceedings, establishes a policy on the part of the Cherokee Nation of allowing garnishments of tribal funds to satisfy validly entered judgments of the courts of the State of Oklahoma, which judgments are entitled to full faith and credit under Cherokee Nation law. *See* JAT Rule 45 ("The courts of the Cherokee Nation shall give full faith and credit to judgments entered by the State of Oklahoma. Likewise, the State of Oklahoma gives full faith

---

1. The list of garnishment proceedings previously set forth includes a Wilcoxen garnishment proceeding (No. 2) in the District Court of Cherokee County. That proceeding, however, appears to be identical to the JAT garnishment proceeding identified as No. 4 in the list. As with many of the other garnishment proceedings at issue, the court is operating in a vacuum as to the current status of such proceedings due to the Cherokee Nation's failure to present any evidence in this respect. As a result, the court must assume the state court Wilcoxen garnishment (No. 2) is no longer at issue since an identical garnishment (No. 4) was taken up and resolved by the JAT.

and credit to judgments entered by the courts of the Cherokee Nation.")

In support of its contention that funds of a sovereign Indian tribe are not subject to garnishment, the Cherokee Nation primarily relies on the cases of *Joe v. Marcum*, 621 F.2d 358 (10th Cir.1980) and *Maryland Casualty Company v. Citizens Nat. Bank of West Hollywood*, 361 F.2d 517 (5th Cir.), *cert. denied*, 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966). A review of these cases, however, reveals that they do not support the Cherokee Nation's position that tribal funds cannot be garnished in state court proceedings.

In *Joe*, the Tenth Circuit Court of Appeals upheld a district court's decision enjoining the enforcement of a writ of garnishment issued by a state court judge which attached wages earned by Joe, a Navajo Indian, from his employment with a company operating a strip mine on the Navajo Reservation. The Tenth Circuit determined that allowing the garnishment proceeding to go forward would result in the impingement of tribal sovereignty. *Joe*, 621 F.2d at 361. Central to this determination, however, was the fact that the Navajo Tribe did not provide for garnishment of wages as part of its judicial code authorizing the enforcement of judgments obtained in tribal courts. *Id.* at 361. Thus, the Tenth Circuit concluded that "to permit the state court of New Mexico to run a garnishment against [Joe's employer], on the reservation, and attach wages earned by Joe for on-reservation labor, would thwart the Navajo policy *not* to allow garnishment." *Id.* at 362.

The instant case stands in direct contrast to *Joe*. Here, the JAT, the highest court within the Cherokee Nation judicial system, has adopted the rules and statutes of the State of Oklahoma concerning enforcement of judgments. JAT Rule 44.1, approved by the Chief Justice of the JAT and transmitted to the tribal council on May 25, 1996, provides:

> The procedure for obtaining, entering, enforcement and collection of judgments in the Federal Rules of Civil Procedure and in the rules and statutes of the State of Oklahoma shall apply to obtaining, entering, enforcement and collection of judgments of the District Court and Judicial Appeals Tribunal (Supreme Court) of the Cherokee Nation.

Necessarily included within the procedures for enforcement and collection of judgments under Oklahoma law is the issuance of writs of garnishments. 12 O.S. § 1171(A) ("Any creditor shall be entitled to proceed by garnishment in any court having jurisdiction against any person who shall be indebted to the creditor's debtor or has any property in his possession or under his control belonging to such creditor's debtor, in the cases, upon the conditions, and in the manner described by law.") Thus, rather than having a policy not to allow garnishments as the Navajo Tribe did in *Joe*, the Cherokee Nation has explicitly sanctioned a policy of allowing garnishments of tribal funds by adopting Oklahoma procedures for the enforcement and collection of judgments. Consequently, it would not impinge on tribal sovereignty to allow the state court garnishment proceedings to stand.

The Cherokee Nation also relies on *Maryland Casualty Company* in support of its position. In *Maryland Casualty Company*, a writ of garnishment was issued to recover tribal funds on deposit in a bank to satisfy a judgment entered against the Seminole Tribe of Florida, Inc., which was incorporated pursuant to a charter of incorporation issued by the Secretary of Interior. The Fifth Circuit Court of Appeals held that the incorporated Seminole Tribe was immune from garnishment proceedings because its waiver of immunity contained within its bylaws was expressly qualified and excluded from the waiver the levy of any judgment, lien or attachment against tribal property. *Maryland Casualty Company*, 361 F.2d at 520. Here, no such exclusion exists as part of the Cherokee Nation's adoption of the state of Oklahoma's procedures for the enforcement and collection of judgments. To the con-

trary, as previously determined by the court, the adoption of such procedures necessarily includes garnishment procedures under Oklahoma law. Thus, the Cherokee Nation's sovereign immunity is not offended by the enforcement of garnishments proceedings specifically adopted by the tribe to govern tribal court judgments and, by implication, judgments afforded full faith and credit under Cherokee Nation law.

### III.

This case is yet another example of the seemingly endless political infighting between the executive and judicial branches of the Cherokee Nation. Resort to a federal district court appears to be the method of choice for resolution of the internal struggles of the Cherokee Nation. While this court does have jurisdiction to determine whether the tribal court has exceeded the limits of its jurisdiction, this court will insist that the Cherokee Nation first exhaust its tribal remedies as mandated by the Supreme Court in *National Farmers Union*. Thus, with respect to the tribal court garnishments outlined above, this court dismisses the Cherokee Nation's complaint without prejudice to refiling following the completion of the tribal appellate review process.[2] As to the Walker state court garnishment proceeding, the court finds there is no impingement on tribal sovereign by allowing the garnishment order issued by the District Court of Cherokee County to stand. Consequently, the Cherokee Nation's claim regarding the Walker garnishment should be dismissed with prejudice.

2. Although the tribal exhaustion rule requires that the court refrain at this time from issuing a ruling on the jurisdictional challenge presented by the Cherokee Nation in connection with the tribal garnishments, the court notes that its ruling on the Walker state court garnishment would seem to include a resolution of all issues necessarily raised as part of any challenge to garnishment proceedings involving the Cherokee Nation, whether those proceedings be state, federal, or tribal in origin.